**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**THERESE WESTPHAL**                                                                              **PLAINTIFF**

V.                                              4:09CV00099 JMM

**LASE MED INC.; ANTONELLA
CARPENTER, Individually;
JOSEPH P. WARD, M.D., Individually;
LASE MED INC. OF ARKANSAS**                                                   **DEFENDANTS**

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pending is the Motion for Summary Judgment filed by Defendants Antonella Carpenter ("Carpenter"), Lase Med Inc. ("Lase Med"), and Lase Med Inc. of Arkansas ("Lase Med of Arkansas"). The Plaintiff has responded to the Motion and the Defendants have replied. For the reasons set forth below, the Motion is granted in part and denied in part.

I.      Undisputed Facts

Plaintiff Therese Westphal, a California resident, was diagnosed with breast cancer in September of 2007. Biopsies conducted at that time showed invasive ductal carcinorma in her left breast consisting of a large five to six centimeter central mass. Plaintiff was disturbed and frightened about her breast cancer treatment options and began researching alternative treatments.

Defendant Lase Med Inc. is a Nevada corporation. Lase Med owns the European patent for L.I.E.S.H. therapy which was created by Defendant Antonella Carpenter. L.I.E.S.H. stands for Light Induced Enhanced Selective Hyperthermia. According to the Defendants, L.I.E.S.H. is a procedure that exposes cancerous cells to sufficiently elevated temperatures to kill the cells without collateral damage.

Plaintiff learned of Defendant Lase Med Inc. through a hand-written note she discovered in a local health food store. The note had been written by Ann Marks, who left the note in a book shelf at

the health food store for discovery by others seeking alternative methods for cancer treatment. Marks highly praised the treatment of Lase Med. Plaintiff contacted Marks and spoke with her about Lase Med's L.I.E.S.H. treatment.

Lase Med's internet site, which was reviewed by Plaintiff prior to seeking treatment, states in part:

> We perform the necessary testing to confirm the death of the tumor. We show all patients the results which confirm that the tumor mass is dead or dying.
>
> LMI's L.I.E.S.H. Therapy, as originally designed by its founder's team, can successfully kill cancer without the need for additional damaging procedures or the utilization of any follow-up drug regimen.
>
> LMI's methodology successfully attacks cancer without the need for invasive surgery. . . . ; hence the chances of reoccurrences or metastasis are greatly reduced.

Plaintiff scheduled a five-day treatment at the Lase Med facility located in Jacksonville, Arkansas. The L.I.E.S.H. therapy procedure was performed on Plaintiff's left breast on November 26 through November 30, 2007. Plaintiff paid $6,250.00 for the treatments.

At the end of her L.I.E.S.H. treatments, Plaintiff felt wonderful and her pain had resolved. She was pleased with the treatment. However by the end of March 2008, Plaintiff's left breast became increasingly tender. In late April, she sought treatment from an oncologist, Dr. Schwartz, in California. Dr. Schwartz determined that Plaintiff had cancer in her left breast and recommended a mastectomy and chemotherapy. Plaintiff had tremendous response to the chemotherapy treatments and a PET scan of July 10, 2008 was negative, indicating Plaintiff was in remission. A PET Scan of Plaintiff on February 19, 2009 was negative and indicated that Plaintiff's cancer was still in remission. Plaintiff did not undergo a mastectomy.

Six months later, mammogram results showed that Plaintiff's breast cancer had returned. A mastectomy was done at that time. As of February 1, 2010, Plaintiff has experienced a complete

resolution of multiple PET positive soft tissue densities in the left infraclavicular region and left axilla. In other words, she has been cancer-free.

Plaintiff filed suit against the Defendants on February 9, 2009. Plaintiff alleges in her Amended Complaint that the Defendants were negligent in their care and treatment of her, that they violated the Arkansas Deceptive Trade Practices Act, committed fraud, and the tort of outrage.

Defendants Lase Med, Carpenter, and Lase Med of Arkansas filed a Motion for Summary Judgment of Plaintiff's claims stating: 1) Lase Med did not breach any duty of care owed to Plaintiff; 2) L.I.E.S.H. treatment is not unconscionable as required by Section 4-88-107 of the Arkansas Deceptive Trade Practices Act; 3) the facts do not support a claim for the tort of outrage under Arkansas law; and 4) Plaintiff has failed to establish that the Defendants made any false representations as required to prove fraud.

II.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

  III. Discussion of the Law

  A. Negligence

Defendants state that Lase Med did not owe a specific duty of care to the Plaintiff and that the Plaintiff has failed to identify a duty of care. While Plaintiff has not expressly stated a specific duty of care owed to her by Lase Med, the Court finds that Lase Med had a duty of ordinary care under the circumstances.

> A failure to exercise ordinary care is negligence. When I use the words "ordinary care," I mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence in this case. It is for you to decide how a reasonably careful person would act under those circumstances.

AMI Civ. 3rd 303; *Wiles v. Webb,* 946 S.W.2d 685, 689 (Ark. 1997). In this case, the actions of Carpenter, as employee, officer and director of Lase Med, are imputed to Lase Med. "We have long

applied the rule of agency law that a corporation, which can act only through its officers and agents, is affected with notice which comes to an officer, agent or employee in the line of his duty and the scope of his powers and authority and that knowledge of an officer, agent or employee acquired in the ordinary discharge of his duties is ordinarily to be imputed to the corporation." *Hill v. State,* 253 487 S.W.2d 624, 631 (Ark. 1972). Defendants' Motion for Summary Judgment of Plaintiff's negligence claim is DENIED.

  B.  <u>Arkansas Deceptive Trade Practices Act</u>

In the Amended Complaint, Plaintiff alleges that "[t]he acts of Carpenter and Lase Med constituted deceptive trade practices pursuant to Ark. Code Ann. § 4-88-107." (Amended Complaint, at p. 7). In Response to the Defendants' Motion for Summary Judgment, Plaintiff states;

> Plaintiff's allegations also encompass violations of Ark. Code Ann. § 4-88-108 which makes concealment, suppression, or omission of any material facts a violation of the act. . . . If defendants' argument is somehow that plaintiff's complaint does not specifically allege this particular misrepresentation or is not broad enough to encompass § 4-88-108, plaintiff will happily move to amend. These allegations have been pursued in discovery, and plaintiff still awaits any proof concerning Antonella Carpenter's educational background.

(Resp. To Mot. For Sum. Judg., at p. 3). The Court finds that Plaintiff has not alleged in her Amended Complaint that the Defendants violated § 4-88-108 of the Arkansas Deceptive Trade Practices Act. Therefore, Defendants' Motion for Summary Judgment as it pertains to allegations of § 4-88-108 violations is GRANTED without prejudice to Plaintiff's right to request leave to amend her complaint.

Defendants also argue that the Plaintiff cannot prove that the Defendants had the "intent" necessary to state a claim under § 4-88-107 of the ADTPA. Specifically, Defendants state that they could not have the requisite intent of "knowingly and intentionally engaging in a deceptive trade practice" because Carpenter had knowledge that L.I.E.S.H. therapy had benefitted some breast cancer

5

patients over the years.  Although Defendants stated in their brief that they would supply deposition testimony from former Lase Med patients who had successful L.I.E.S.H. therapy, no depositions have been filed and no evidence exists in the record to prove L.I.E.S.H. has been beneficial to any patient. (Brief in Support of Summ. Judg., at p. 11, fn.1).

Plaintiff alleges that Carpenter and Lase Med "knowingly took advantage" of her while she was suffering from a physical infirmity, were "essentially selling false hope," and engaging in unconscionable trade practices by misrepresenting the success of L.I.E.S.H. therapy. (Amended Complaint, at p. 7).   These allegations are covered by Arkansas Code Annotated Sections 4-88-107(a)(1), (a)(8)(A) and (a)(10).[1]  The Court finds from the record that there is a question of fact as to whether the Carpenter and Lase Med had the intent to take advantage of Plaintiff, sell her false hope or misrepresent the success of their therapy.  Therefore, Defendants' Motion for Summary Judgment

---

[1]  Arkansas Code Annotated § 4-88-107 provides:

a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:

(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;

\* \* \*

(8) Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of:

(A) Physical infirmity;

\* \* \*

(10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade. . . .

Ark. Code Ann. § 4-88-107.

as to Plaintiff's claims under Sections 4-88-107(a)(1), (a)(8)(A) and (a)(10) of the Arkansas Code is DENIED.

    C.    <u>Fraud</u>

Plaintiff's fraud claim rests upon the allegation that Carpenter and Wendy Simmons, the receptionist for Lase Med and the Secretary of the Corporation, told Plaintiff that L.I.E.S.H. therapy was 100% effective in the treatment and cure of cancer, that she would be cancer-free at the end of her treatment, that she, in fact, was cancer-free at the end of her treatment, and that the Defendants were experts in the treatment and cure of cancer. Plaintiff testified that she was given this information by the Defendants and has provided copies of information shown on Lase Med's internet website which appears to confirm Plaintiff's testimony.

Under Arkansas law, the elements of fraud are:

(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Fowler v. SmithKline Beecham Clinical Laboratories, Inc.,* 225 F.3d 1013, 1014 (8th Cir. 2000) (citing *Goforth v. Smith,* 991 S.W.2d 579, 586 (Ark. 1999).

Defendants argue that Plaintiff's fraud claim is deficient because she cannot prove justifiable reliance based upon the effect of Ann Marks' influence on Plaintiff's decision to try L.I.E.S.H. therapy. Defendants contend that Plaintiff relied on Ann Marks' testimonial regarding L.I.E.S.H., not the statements of the Defendants. The Court finds that there is sufficient evidence to create a genuine issue of material fact as to whether Plaintiff relied on the alleged statements of the Defendants and whether she was justified in doing so.

Defendants also argue that Plaintiff cannot prove she was justified in relying on any alleged representation that L.I.E.S.H. therapy was a cure for cancer because she signed a Waiver of Liability and Post Treatment Guidelines Agreement. (Def.'s Mot. For Summ. Judg., Exh. 13 and 14). Plaintiff states that the Waiver helps establish her fraud claim by stating that Plaintiff was given full disclosure and counseling on the merits of L.I.E.S.H. therapy. Neither side provides any case law to support their arguments. The Court finds that there is sufficient evidence to create a genuine issue of material fact regarding Plaintiff's reliance. It is for a jury to determine whether Plaintiff's reliance was justified in light of the Waiver and Post Treatment Guidelines Agreement. Therefore, this portion of the Defendants' Motion for Summary Judgment is DENIED.

D.    Tort of Outrage

The Arkansas Supreme Court has explained that the tort of outrage is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Palmer v. Ark. Council on Econ. Educ.,* 40 S.W.3d 784, 791-92 (Ark. 2001) There are four elements necessary to establish liability for the tort of outrage in Arkansas:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Island v. Buena Vista Resort,* 103 S.W.3d 671, 681 (Ark. 2003)(citing *Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393 (Ark. 2002)). Arkansas has taken a very narrow view of outrage claims and requires clear-cut proof to establish the elements. *Allen v. Allison*, 155 S.W.3d 682, 692 (Ark. 2004).

Defendants contend that the facts alleged in this action do not rise to the level of conduct necessary to prove the tort of outrage. Plaintiff argues that this case is analogous to *McQuay v. Guntharp*, 963 S.W.2d 583 (Ark. 1998) where the Arkansas Supreme Court found the defendant doctor's conduct to be egregious enough to establish the tort of outrage. The Court, however, finds *McQuay* to be distinguishable from the instant case. In *McQuay*, the defendant doctor fondled the plaintiffs' breasts in a sexually suggestive manner under the ruse that he needed to check their heart rate or lungs. The facts of the instant case are not similar and the Court finds that they do not rise to the level of "utterly intolerable in a civilized community" or "beyond all possible bounds of decency." Defendants' Motion for Summary Judgment of Plaintiff's tort of outrage claim is GRANTED.

      E.      <u>Personal Liability of Carpenter</u>

"The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder [under Arkansas law] vary according to the circumstances of each case." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). "[I]t is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded." *Id.* (citing *Rounds & Porter Lumber Co. v. Burns*, 216 Ark. 288, 225 S.W.2d 1, 2 (1949)).

Defendants argue that Defendant Carpenter should not be held individually liable in this action because she was acting as an agent of Lase Med Inc. at all times. In response, Plaintiff asserts that Carpenter has been either unable or unwilling to provide requested discovery which Plaintiff needs to respond to this part of the Motion for Summary Judgment. (Ex. A to Pl's Resp. To Mot. For Summ. Judg.).

The Court finds that there is sufficient evidence in the record to allow a jury to determine

9

whether Lase Med Inc. and Lase Med of Arkansas are the alter egos of Carpenter, including Plaintiff's statements that she developed L.I.E.S.H. therapy (Carpenter Dep. At p.6), obtained the patent (Docket # 102, Exh. 2), assigned the patent to the corporation, is the only person who can treat a patient with the therapy (Carpenter Dep. At p.5), is the CEO of Lase Med Inc. (Carpenter Dep. At p. 152), her daughter is the Secretary of the Board of Lase Med Inc., and the corporations do not have liability insurance. In her deposition, Carpenter stated that she was also the President of Lase Med Inc., however, Carpenter later recanted by sending an email stating that Lance Kerness is the President and Treasurer. (Docket # 102, Exh. 3). Accordingly, this portion of Defendants' Motion for Summary is DENIED.

IV. Conclusion

For the reasons set forth, the Defendants' Motion for Summary Judgment (Docket # 83) is granted as to the tort of outrage and Section 4-88-108 of the Arkansas Deceptive Trade Practices Act. The Motion (Docket # 83) is denied as to negligence, claims under Sections 4-88-107(a)(1), (a)(8)(A) and (a)(10) of the Arkansas Code, fraud, and the personal liability of Antonella Carpenter.

IT IS SO ORDERED this 11th day of April, 2011.

_____
James M. Moody
United States District Judge